**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-02639-PAB-CYC

COLORADO FIREARMS, AMMUNITION AND ACCESSORIES, LLC d/b/a CENTENNIAL GUN CLUB, a Colorado limited liability company, *et al.*,

Plaintiffs,

v.

PHILIP WEISER, in his official capacity as Attorney General of Colorado, *et al.*,

Defendants.

---

**DEFENDANTS' JOINT MOTION TO DISMISS**

---

Attorney General Weiser and Executive Director Humphreys,[1] by and through their undersigned counsel, move to dismiss Plaintiffs' Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 12(b)(1) and (12)(b)(6) and state in support as follows:

**INTRODUCTION**

Firearms dealers are a quintessentially "closely regulated" industry. *United States v. Biswell*, 406 U.S. 311, 315–16 (1972). "Large interests are at stake, and inspection is a crucial part of the regulatory scheme, since it assures that weapons are distributed through regular channels and in a traceable manner and makes possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms." *Id.* As such, warrantless

---

[1] On August 26, 2026, the parties filed a stipulated notice of voluntary dismissal of Governor Polis and of Claim 3. *See* Dkt. 27. This Court accepted the dismissal of Governor Polis but not the dismissal of Claim 3. Dkt. 28. Prior to filing the notice of dismissal, Defendants informed Plaintiffs of their position that the proper mechanism for dismissing a claim is amending the complaint, though Plaintiffs declined. As a result, Defendants include Claim 3 in this Motion.

inspections "pose only limited threats to the dealer's justifiable expectations of privacy." *Id*. at 316.

Colorado has a robust regulatory environment for firearms dealers. Senate Bill 426, section 3, which later became C.R.S. § 18-12-402, was first adopted over a century ago to require gun dealers to maintain certain records and make them available to inspection by "police officers." *See* 1911 Colo. Sess. Laws ch. 136, p. 409, S.B. 426, § 3 (formerly codified at C.R.S. § 12-26-102, later moved to C.R.S. § 18-12-402) (attached as **Exhibit A**).

With H.B. 24-1353, which went into effect July 1, 2025, the General Assembly required firearms dealers to obtain a state permit. *See* C.R.S. § 18-12-401.5(1). In response, the Department of Revenue created the Firearms Dealer Division ("FDD") to enforce the state permitting requirement, and it promulgated rules to provide further clarity regarding the regulatory program and its requirements. *See* 1 CCR 214-1.[2] Now, when FDD inspects the records that firearms dealers have long been required to maintain, it does so only to ensure the permit holder is complying with the requirements to hold a state permit, and only according to other limitations in statute and its rules—that is, during business hours and at the dealer's registered place of business. C.R.S. §§ 18-12-401.5(6) and -(7)(a); Rules 3-100(B), 1 CCR 214-1 (attached as **Exhibit B**).

In 2026, the General Assembly passed House Bill 1126, making various changes to this regulatory scheme. Among other changes, it amended section 18-12-402 to clarify the records

[2] When ruling on Rule 12(b)(6) motion, a court may consider "matters of which a court may take judicial notice." *Tellabs Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). A court may take judicial notice of relevant regulations, *see Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984), for purposes of a Rule 12(b)(6) motion*, see Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1146 (10th Cir. 2013); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

required to be maintained by firearms dealers. Specifically, section 18-12-402(3) was updated to replace "duly authorized *police* officer" with "duly authorized *peace* officer." (emphasis added). This was amended to permit FDD inspectors to inspect records, as they are "peace officers" when enforcing section 18-12-402. *See* C.R.S. § 16-2.5-121.5 (enacted 2025). It is this provision, section 18-12-402(3), that Plaintiffs challenge as an unlawful search under the Fourth Amendment.

Under settled Supreme Court precedent, warrantless administrative inspections of closely regulated industries are permissible so long as they are limited by time, place, and scope. *New York v. Burger*, 482 U.S. 691, 702–03 (1987). This case, therefore, presents an uphill battle for Plaintiffs, who are licensed firearms dealers in Colorado and member organizations. The only inspections Plaintiffs address in the allegations of the Complaint were conducted (or are scheduled to be conducted) by FDD investigators pursuant to the statutes and rules governing this closely regulated industry.

But before this Court considers the substance of the challenge, there are serious justiciability problems with Plaintiffs' case, including that (1) Plaintiff's state law claim is subject to the Eleventh Amendment's bar, as established by *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106 (1984), (2) the Attorney General is also immune under the Eleventh Amendment, and (3) Plaintiffs lack standing. Specifically, Plaintiffs fail to allege any credible threat of injury from the challenged provision because, at best, they allege that they will be inspected by FDD inspectors. Those inspectors are subject to regulations and other statutory provisions that limit the time (business hours), place (business premises), and scope (records) of these inspections. As to inspections by other peace officers, including the Attorney General,

Plaintiffs do not allege any particularized and imminent harm, because they do not allege that they have been or will be subject to such inspections. The organizational Plaintiffs' standing is derivative of the individual Plaintiffs', and therefore also absent here.

For these same reasons, Plaintiffs cannot clear the plausibility hurdle. In making a facial challenge to the law, Plaintiffs fail to plausibly allege that the statute is unconstitutional in all of its applications—namely, those conducted by FDD inspectors, which are the only inspections to which Plaintiffs allege they are subject.

Defendants respectfully request that the Court dismiss Plaintiffs' Complaint.[3]

## LEGAL STANDARD

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is appropriate where the Eleventh Amendment bars the claim or a party lacks standing. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180–81 (10th Cir. 2002) (Eleventh Amendment); *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 871 (10th Cir. 2020) (standing). When, as here, a Rule 12(b)(1) motion attacks the sufficiency of the complaint, it mounts a "facial attack" on subject matter jurisdiction, and the court accepts the allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Plaintiff bears the burden of establishing subject matter jurisdiction, as it is "the party asserting jurisdiction." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

A complaint must be dismissed under Rule 12(b)(6) when the allegations do not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). "While courts must accept well-

---

[3] Defendants' counsel conferred in detail with Plaintiffs' counsel by video call and email. Neither party views these defects as curable by amendment.

pleaded factual allegations as true, purely conclusory statements are not entitled to this presumption." *WildEarth Guardians v. Extraction Oil & Gas, Inc.*, 457 F. Supp. 3d 936, 945 (D. Colo. 2020).

**ARGUMENT**

**I. The Eleventh Amendment precludes Plaintiffs' state law claim.**

Plaintiffs' third claim for "Violation of Article II, Section 7 of the Colorado Constitution" must be dismissed under the Eleventh Amendment and established precedent. It is axiomatic that the Eleventh Amendment does not permit suit against a state (or state official) for violation of state law. *See, e.g., Pennhurst*, 465 U.S. at 106. There, the Supreme Court held:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment. We conclude that *Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law.

*Id.* Nor can Plaintiffs avoid this result by relying on 28 U.S.C. § 1367. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002) ("§ 1367(a)'s grant of jurisdiction does not extend to [state-law] claims against nonconsenting state defendants"); *Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013) ("supplemental jurisdiction under § 1367 does not override the Eleventh Amendment's bar on suing a state in federal court").

No additional discussion is warranted. This claim must be dismissed.

**II. Attorney General Weiser is immune under the Eleventh Amendment.**

The Eleventh Amendment applies to state officials sued in their official capacities because they are "an arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 280 (1977). Under the "narrow exception" of *Ex parte Young*, *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021), a plaintiff may only sue a state official for prospective relief for alleged ongoing violations of federal law, *Free Speech Coalition, Inc. v. Anderson*, 119 F.4th 732, 736 (10th Cir. 2024). But critically, the official must have: (1) "a particular duty to enforce" the challenged statute and (2) "a demonstrated willingness to exercise that duty." *Id.* (citations omitted). Officials enforce a law when they "clearly assisted or currently assist in giving effect to it." *K.A. v. Barnes*, 134 F.4th 1067, 1077 (10th Cir. 2025) (citation modified); *see Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 828 n.15 (10th Cir. 2007). The state official's duty "must be more than a mere general duty to enforce the law." *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (quotation omitted).

Plaintiffs fail to clear this hurdle with respect to the Attorney General.

First, the Attorney General has no "particular duty" to inspect firearms dealers. Indeed, the Department of Revenue is charged with that duty. *See* C.R.S. §§ 18-12-401(2); 18-12-401.5; *see also Peterson v. Martinez*, 707 F.3d 1197, 1207 (10th Cir. 2013) ("when a state law explicitly empowers one set of officials to enforce its terms, a plaintiff cannot sue a different official *absent some evidence* that the defendant is connected to the enforcement of the challenged law") (emphasis added). The only allegation regarding the Attorney General's enforcement is that he is the "chief law enforcement officer" of the state and a "peace officer." Dkt. 1 ¶ 20. But those are general duties of the sort repeatedly deemed insufficient under *Ex parte Young*. *See, e.g., Free Speech Coal.*, 119 F.4th at 739; *Chamber of Com. of the U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010). Specifically, the Attorney General's "status as a peace officer is too generic to constitute a particular enforcement connection." *Drexler v. Weiser*, et al., No. 25-1173, 2026 WL

2137881, at *4 (10th Cir. July 24, 2026) (unpublished). Otherwise, "any citizen could name any [peace officer] in an action challenging nearly any Colorado statute." *Id.*

Second, Plaintiffs allege no facts showing the Attorney General has a "demonstrated willingness" to enforce the challenged provisions of the statute. Plaintiffs do not allege the Attorney General has attempted to inspect them or any other firearms dealers' records or enforce noncompliance. Nor do they allege that the Attorney General has any future intent to do so. Lacking any factual allegations as to the Attorney General, beyond his general authority, Plaintiffs also fail to allege that he is engaged in an ongoing violation of federal law, which undermines the applicability of *Ex parte Young* in the first instance. *Free Speech Coal.*, 119 F.4th at 736.

As such, the Attorney General is immune from this suit.

## III. Plaintiffs lack standing.

The "irreducible constitutional minimum of standing" contains three elements: (1) injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent not conjectural or hypothetical." *Id.* (citations omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citations omitted).[4] "[T]he mere

[4] Whether and to what extent Plaintiffs can raise a pre-enforcement challenge under the Fourth Amendment appears to be an open question. "To begin, there is no freestanding constitutional right to pre-enforcement review in federal court." *Whole Woman's Health*, 595 U.S. at 52 (Thomas, J. concurring in part and dissenting in part) (citation omitted). As Justice Thomas explained, "[s]uch a right would stand in significant tension with the longstanding Article III

existence of a statute…is ordinarily not enough to sustain a judicial challenge, even by one who reasonably believes that the law applies to him and will be enforced against him according to its terms." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995) (citation omitted).

**A. Plaintiffs fail to allege injury-in-fact, causation, or redressability as to Attorney General Weiser.**

As discussed in Section I, Plaintiffs do not allege any efforts by Attorney General Weiser to inspect them or any other firearms dealer, and therefore they fail to allege that Attorney General Weiser is likely to cause them any injury. And because they cannot show that they are likely to be subject to inspections by Attorney General Weiser, any relief would necessarily fail to address their claimed injury. *Lujan*, 504 U.S. at 560–61.

Nor do they even allege that they are at substantial risk from an inspection by any non-FDD peace officer. *See Driehaus*, 573 U.S. at 158. Plaintiffs merely assert that the statute "invites an overbroad set of peace officers, including lottery investigators, port of entry officers, state student loan investigators, and liquor license inspectors, to conduct inspections on firearms dealers." Dkt. 1 ¶ 138. This allegation is conjectural or hypothetical, at best, since no other

principle that federal courts generally may not 'give advisory rulings on the potential success of an affirmative defense before a cause of action has even accrued.'" *Id.* (quotation omitted). While "a reasonable threat of prosecution for conduct allegedly protected by the Constitution gives rise to a sufficiently ripe controversy," *Ohio C.R. Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 625, n.1 (1986), "[i]n a pre-enforcement challenge it is difficult to determine whether Fourth Amendment rights are seriously threatened," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 504 n.22 (1982). *See also Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (discussing that because of the context specific nature of Fourth Amendment reasonableness, challenges are typically made post-enforcement, not pre-enforcement). Given the other defenses raised in this Motion, which are dispositive of all the claims, Defendants do not believe it is necessary for the Court to resolve this issue but reserve all rights.

allegations have been made related to inspections conducted or any other peace officer under the statute, which, as noted above, has been in effect as to "peace officer" or "police officers" for more than 100 years. In any case, Plaintiffs' concerns regarding peace officer searches generally do not suffice to establish standing for claims against Attorney General Weiser.

**B. Plaintiffs fail to allege injury-in-fact as to Director Humphreys.**

As noted above, Department of Revenue inspections are conducted by FDD investigators. C.R.S. §§ 18-12-401(2); 18-12-401.5(6). Plaintiffs allege that Centennial Gun Club and Salida Gunshop have been inspected by FDD officials while the Leadville Armory "faces additional state inspections." Dkt. 1 ¶¶ 66, 85, 96, and 123. Plaintiffs further allege that scheduling and conducting these inspections demonstrates the State's intent to enforce section 18-12-402(3). Dkt. 1 ¶ 122. However, because the inspections conducted by FDD investigators are subject to constitutional limits in their time, place, and scope, Plaintiffs have failed to establish an injury in fact as required for standing.

Under the Fourth Amendment, warrantless searches are generally unreasonable unless an exception applies. *S&S Pawn Shop Inc. v. City of Del City*, 947 F.2d 431, 436 (10th Cir. 1991).[5] One such exception allows for warrantless administrative inspections in closely regulated industries. *Burger*, 482 U.S. at 702–03. The rationale for administrative searches is that, in the case of closely regulated industries, "the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes."

[5] Defendants do not dispute that C.R.S. § 18-12-402 permits warrantless inspections. *See V-1 Oil Co. v. Wyoming*, 902 F.2d 1482, 1485 (10th Cir. 1990) ("[A] bare authorization for inspections is construed to authorize warrantless inspections.").

*Donovan v. Dewey*, 452 U.S. 594, 600 (1981). As Plaintiffs concede, Dkt. 1 ¶ 133, the firearms industry has long been considered closely regulated. *Biswell*, 406 U.S. at 314–16.[6]

Under *Burger*, warrantless inspections in a closely regulated industry are reasonable under the Fourth Amendment where (1) the regulatory scheme serves a substantial governmental interest; (2) warrantless inspections are necessary to further the scheme; and (3) the program provides an adequate substitute for a warrant. 482 U.S. at 700–03. The third factor in turn requires that the discretion of inspectors be "carefully limited in time, place, and scope." *Id.* at 703 (citing *Biswell*, 406 U.S. at 315). Whether or not all applications of the challenged statute meet the *Burger* test, the inspections conducted by FDD investigators, under the limitations in C.R.S. § 18-12-401.5(6) and Rule 3-100(B), 1 CCR 214-1, satisfy these requirements.

It does not appear that Plaintiffs dispute the first *Burger* factor. Dkt. 1 ¶ 133. Indeed, Colorado's statute and regulatory scheme serve substantial governmental interests similar to the federal interests recognized in *Biswell*. There, the Court held that effective inspection served substantial governmental interests in ensuring traceability of firearms, preventing transfers to undesirable persons, and detection of the origin of particular firearms. 406 U.S. at 315–16. Colorado's firearm dealer inspection scheme reflects the same interest in preventing unlawful firearms transactions, preventing sales or transfers to unqualified individuals, and ensuring accurate recordkeeping. *See* C.R.S. §§ 18-12-401.5(6)(a)-(b) (purpose of inspections is to ensure the permit holder is "complying with the requirements to hold a state permit.").

[6] Plaintiffs' reliance on *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), is largely inapposite given that the Court in that case declined to conclude that hotels were within a closely regulated industry.

Under the second *Burger* factor, unannounced inspections are essential to the regulatory scheme as warrant requirements would frustrate enforcement, particularly in the firearms context. *Biswell*, 406 U.S. at 316; *see also Burger*, 482 U.S. at 712–13. In *Biswell*, the Court recognized "if inspection [of firearms dealers] is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context the prerequisite of a warrant could easily frustrate inspection." *Id.* at 316. The same is true of Colorado's regulatory scheme, where inspections serve as the primary method of verifying dealer compliance.[7]

Plaintiffs do not appear to challenge the necessity of warrantless inspections of firearms dealers in principle. Instead, Plaintiffs argue that warrantless inspections are not necessary at the state level because the federal regime already serves that purpose. Dkt. 1 ¶ 134. But as the Court in *Biswell* recognized, federal and state regulatory schemes work together, stating "close scrutiny of [firearms] traffic is undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." *Id*. at 315. Defendants are aware of no other circumstance in which a federal inspection scheme was held to be sufficient to serve a state's interest in enforcing its own firearms regulatory program.

As to the third *Burger* factor, Colorado's statutes and rules governing regulatory inspections are an adequate substitute for a warrant. With respect to <u>time</u>, inspections are to occur during the regular business hours of operation described in a dealer's state permit

[7] Although some element of surprise may be essential to this purpose, it is not to say that the statute does not give adequate "assurance of regularity." *V-1 Oil Co.*, 902 F.2d at 1487 (citation omitted). Unlike a circumstance where "searches are so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials," *id*. (citation omitted), in the case at bar Plaintiffs admit that within the last six months the state either conducted or scheduled inspections of all three dealer Plaintiffs. Dkt. 1 ¶ 122.

application. C.R.S. § 18-12-401.5(6)(b); Rule 3-100(A), 1 CCR 214-1. With respect to place, inspections are limited to the permit holders' "business premises," C.R.S. § 18-12-401.5(6) and Rule 1-115(A), 1 CCR 214-1. With respect to scope, FDD's inspection of the records required by § 18-12-402 is for the limited purpose of "ensur[ing] that the permit holder is complying with the requirements to hold a state permit," § 18-12-401.5(6)(a) and Rule 3-100(B), 1 CCR 214-1, which includes the requirement to "make a record required pursuant to 18-12-402." C.R.S. § 18-12-401.5(7)(a). The scope of inspections is further circumscribed by the types of violations for which regulatory penalties may be imposed (listed in C.R.S. §§ 18-12-401.5(7) and (8)). Plaintiffs do not allege that the FDD inspections followed any process apart from the strict regulatory structure identified above. *See generally* Dkt. 1.

Colorado's scheme is no more permissive than the schemes upheld in *Burger* and *Biswell.* In *Biswell*, a pawn shop operator was subjected to a warrantless inspection pursuant to the Gun Control Act of 1968, 18 U.S.C. § 923(g). 406 U.S. at 311–12. That provision authorized "official entry during business hours into the premises including places of storage of any firearms or ammunition dealer for the purpose of inspecting or examining any records or documents required to be kept and any firearms or ammunition kept or stored by such dealer at such premises." *Id.* (citation modified). Similarly, an FDD investigator is limited to the business hours and business premises of state permittees. In *Burger*, a junkyard owner was subjected to a warrantless inspection under New York state code requiring junkyards to keep specific records related to vehicle dismantling and to "produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises." 482 U.S at 694 n.1. This

provision was upheld despite its lack of statutory limits on time because it was found to "perform the two basic functions of a warrant: it [advised] the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it [limited] the discretion of the inspecting officers." *Id*. at 703. Similarly, here, the scheme limits the FDD investigators' scope to the records being kept for the purposes of firearms dealing and gives dealers notice that they are subject to warrantless inspections of their firearms dealer records.

These time, place, and scope limitations on the discretion of FDD investigators conducting regulatory inspections provide an adequate substitute for a warrant under *Burger*. As a result, Plaintiffs fail to allege any injury in fact as a result of inspections performed by FDD inspectors, and therefore lack standing as to these inspections.[8]

**C. The organizational plaintiffs lack standing because their members do.**

"[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). At the pleading stage, Plaintiffs must

[8] Nor can Plaintiffs allege injury from C.R.S. § 18-12-403, which penalizes non-compliance with C.R.S. § 18-12-402(3), because they do not allege an intent to violate the statute. *Contra Driehaus*, 573 U.S. at 159. Rather, Plaintiffs document their efforts at compliance with FDD inspections, noting that they are in compliance with recordkeeping requirements. Dkt. 1 ¶¶ 63, 67, 83, 86, 95. Plaintiffs "can't satisfy the credible-threat-of-prosecution test by relying on evidence of their compliance with the challenged statute." *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 548 (10th Cir. 2016). Furthermore, as the Court noted in *Burger*, states can "address a major social problem *both* by way of an administrative scheme *and* through penal sanctions" without making warrantless searches that are part of a "regulatory scheme [that is] properly administrative" unconstitutional. 482 U.S. at 712–17 (emphases in original) (citing *Biswell*, 406 U.S. at 315–16).

allege sufficient facts to permit the Court reasonably to infer that at least one identified or otherwise specifically described member faces a concrete and imminent injury. *Landowners United Advoc. Found., Inc. v. Brohl*, No. 16-cv-00603-PAB-CBS, 2017 WL 1243064, at *3 (D. Colo. Mar. 17, 2017) (unpublished). Plaintiffs Colorado State Shooting Association and Colorado Federal Firearms Licensee Association do not assert standing in their own right. *Compare* Dkt. 1 ¶¶ 104–08, 116–19. Instead, the organizational Plaintiffs base their alleged standing on the purported injuries of their members. *Id.* However, because none of the individual Plaintiffs have standing, the organizations' derivative claim of standing must also fail.[9]

**IV. Plaintiffs fail to state a claim.**

Plaintiffs assert a facial claim under the Fourth Amendment to the U.S. Constitution. Dkt. 1 ¶¶ 8, 125.[10] A facial constitutional claim requires proof that "no set of circumstances exists" under which a challenged law would be valid. *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). To prevail, Defendants need only show constitutionality in some applications. *Id.*; *Scherer v. U.S. Forest Service*, 653 F.3d 1241, 1245 (10th Cir. 2011). Because inspections conducted pursuant to the state's regulatory program satisfy all three *Burger* factors, the statute is constitutional in at least some of its applications.

---

[9] On August 14, 2026, Plaintiffs' counsel represented to undersigned that "each of the named FFLs in the complaint are both members of CSSA and CFFLA and were members of the associations at the time of filing." Based on this representation, Defendants do not challenge the organizational Plaintiffs' failure to specifically identify a specific member, but rather assert that the specific members they identify lack standing.

[10] Plaintiffs include a seemingly off-hand reference to "as applied" relief in the wherefore clause of the Complaint. Dkt. 1 p. 32. However, they do not support this request with any allegations demonstrating that inspections of specific Plaintiffs were unconstitutional as applied. *Compare* Dkt. 1 ¶¶ 66, 85–86, 96. In fact, the allegations are fully consistent with the permissible statutory and regulatory scheme discussed here.

Plaintiffs' facial challenge therefore fails as a matter of law and should be dismissed under Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety.

Respectfully submitted this 31st day of August, 2026.

PHILIP J. WEISER
Attorney General

s/ Ruchi Kapoor

***Ruchi Kapoor***
Assistant Attorney General
***John Alan Call***
Senior Assistant Attorney General
Marijuana, Liquor & Bankruptcy Unit | Revenue & Regulatory Law Section
Colorado Department of Law
1300 Broadway, Denver, CO 80203
Telephone: 720.508.6369 (Kapoor) 720.508.6327 (Call)
ruchi.kapoor@coag.gov
alan.call@coag.gov

*Attorneys for Executive Director Humphreys*

s/ Lane Towery

***Lily E. Nierenberg***
Senior Assistant Attorney General
***Lane Towery***
Assistant Attorney General
Public Officials Unit | State Services Section
Colorado Department of Law
1300 Broadway, Denver, CO 80203
Telephone: 720.508.6851 (Nierenberg); 720.508.6470 (Towery)
Email: lily.nierenberg@coag.gov; lane.towery@coag.gov

*Attorneys for Attorney General Weiser*